## JUNE P. DEMARINIS ET AL. *v.* UNITED SERVICES AUTOMOBILE ASSOCIATION CASUALTY INSURANCE COMPANY, INC. (15818)

O'Connell, Heiman and Stoughton, Js.

---

Argued October 30, 1996—officially released January 28, 1997

*Thomas G. Moukawsher*, for the appellants (plaintiffs).

*Ralph G. Eddy*, for the appellee (defendant).

STOUGHTON, J. This is an appeal from a summary judgment rendered in favor of the defendant. At issue in this appeal is whether, in light of General Statutes §§ 52-555a through 52-555d,[1] a recovery for loss of consortium remains dependent upon and derivative of bodily injury to the spouse. We affirm the judgment of the trial court.

The essential facts giving rise to this lawsuit are not in dispute. On May 26, 1992, Anthony R. DeMarinis, Jr., was operating his motorcycle when it collided with a motor vehicle owned by Donald F. Scarfo and operated by Natalie Scarfo. DeMarinis suffered injuries in the

---

[1] The text of § 52-555a is set forth hereafter in the text of this opinion. The succeeding three sections require that any claim or cause of action for loss of consortium be brought with or joined with the claims and causes of action with respect to the death of the spouse, that such an action must be commenced within the time in which an action with respect to the death of the spouse may be commenced, and that the claim or cause of action is contingent on proof of facts sufficient to establish recovery for wrongful death of the spouse and is subject to any defenses available against the claim for wrongful death.

collision that resulted in his death on May 28, 1992. Prior to that date, the defendant United Services Automobile Association Casualty Insurance Company, Inc. (USAA), had issued an automobile liability policy to DeMarinis, which was in effect at the time of the collision, covering three vehicles including the motorcycle. The Scarfo vehicle was covered by an automobile liability insurance policy issued by the Royal Insurance Company under which the sum of the limits of bodily injury liability coverage was $300,000.

The plaintiff, June P. DeMarinis, is the surviving spouse of DeMarinis and was appointed administratrix of his estate. The plaintiff claimed damages from the Scarfos as administratrix for the wrongful death of DeMarinis and on her own behalf for loss of consortium. On or about December 10, 1992, the plaintiff settled the claims against the Scarfos with the Royal Insurance Company, having requested and received permission from the defendant to do so, for the entire proceeds of the policy. Two hundred thousand dollars was paid on account of the wrongful death claim, and $100,000 was paid on the loss of consortium claim. These payments exhausted the limits of liability under all bodily injury liability insurance policies applicable at the time of the accident.

The plaintiff's insurance policy with the defendant USAA provides uninsured motorist coverage. Under the terms of that coverage, the defendant agreed to "pay compensatory damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury: 1. Sustained by a covered person; and 2. Caused by an accident." That coverage is provided "only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements."

The policy defines an uninsured motor vehicle as one "[f]or which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is less than the sum of the limits of liability for Uninsured Motorists Coverage applicable to each vehicle for this coverage under this policy." The limit of liability for uninsured motorist coverage under the terms of the policy "for all damages, including . . . direct, derivative or consequential damages arising out of [bodily injury] sustained by any one person in any one accident" is "[t]he limit of liability for [uninsured motorist] Coverage shown in the Declarations for 'each person' multiplied by the number of premiums shown . . . ." The "limit of liability for all damages for [bodily injury] resulting from any one accident" is "the limit of liability for [uninsured motorist] Coverage shown in the Declarations for 'each accident' multiplied by the number of premiums shown . . . ."

The policy declarations show limits of liability for uninsured motorist coverage for bodily injury to be $100,000 for each person and $300,000 for each accident. Because there were three premiums, the defendant's limit of liability for uninsured motorist coverage was $300,000 for all damages arising out of bodily injury sustained by one person and $900,000 for bodily injury resulting from any one accident.

The plaintiffs claim on appeal that the trial court improperly (1) held that a postmortem loss of consortium claim under § 52-555a is dependent and derivative of the claim of the deceased spouse and (2) failed to hold that the defendant's policy would provide coverage "even under the standard set forth in *Izzo* v. *Colonial Penn Ins. Co.*, 203 Conn. 305, 524 A.2d 641 (1987)." Because those issues are overlapping, we address them together.

The cause of action for loss of consortium has evolved over time in Connecticut. Because of the legal status of married women in earlier times, the common law cause of action for loss of consortium generally was available only to husbands. *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 487–88, 408 A.2d 260 (1979). After the legislature had altered the status of married women, so that a married woman could recover damages for personal injury in her own right, our Supreme Court denied a right of recovery for loss of consortium to either spouse. *Marri* v. *Stamford Street R. Co.*, 84 Conn. 9, 78 A. 582 (1911). *Marri* was overruled in *Hopson* v. *St. Mary's Hospital*, supra, 487. Our Supreme Court in *Hopson* held that either spouse has a claim for loss of consortium shown to arise from a personal injury to the other spouse caused by negligence of a third person.

Subsequently, our Supreme Court in *Ladd* v. *Douglas Trucking Co.*, 203 Conn. 187, 191, 523 A.2d 1301 (1987), determined that "a spouse may recover for antemortem loss of consortium in her individual capacity where her common law claim has been joined with the wrongful death action brought by the decedent's estate pursuant to § 52-555." The court further found, however, that a spouse may not recover for postmortem loss of consortium under Connecticut statutory or common law. Id., 191.

Shortly thereafter, in *Izzo* v. *Colonial Penn Ins. Co.*, supra, 203 Conn. 305, the Supreme Court considered whether the spouse of a person injured in an automobile accident was entitled to a separate "per person" recovery for the injury of loss of consortium within the "per occurrence" limit of an automobile liability insurance policy. The policy at issue in *Izzo* provided liability limits applicable to bodily injury coverage in the amount of $100,000 per person and $300,000 per occurrence. Id., 308. The claim of the injured person in *Izzo* was settled for $100,000, and the spouse, who was not

involved in the accident, sought to recover damages for her claim of loss of consortium under the higher per occurrence limit. Id. The Supreme Court held that the per person limit applied to all damages sustained by all persons as a result of *bodily injury* to one person, rejecting an interpretation of the claim for loss of consortium as a claim for bodily injury to a second person. Id., 313. The court in *Izzo* noted that decisions in which other jurisdictions have treated loss of consortium as separate from the claim for direct physical injury for purposes of determining the limit of liability had been based on language of the relevant policies referring to the number of *personal injuries* arising out of one accident as opposed to the number of *bodily injuries*. Id.

On October 1, 1989, § 52-555a was enacted. That statute provides: "Any claim or cause of action for loss of consortium by one spouse with respect to the death of the other spouse shall be separate from and independent of all claims or causes of action for the determination of damages with respect to such death." The plaintiff argues that the enactment of § 52-555a eliminated the rule set forth in *Izzo*, making a postmortem loss of consortium claim "separate and independent for all purposes under the law," including the calculation of limits of liability under a liability insurance policy. She concedes only that a bodily injury must occur before a cause of action for loss of consortium can arise. She, therefore, claims that there were two injuries suffered in the present case for purposes of calculating the liability limitation, the bodily injuries to her husband and her own loss of consortium, and that the limit of liability in this case is $600,000 rather than the $300,000 found by the trial court. We disagree.

Section 52-555a did change the rule set forth in *Ladd* by making a claim for loss of consortium with respect to the death of a spouse "separate from and independent of all claims or causes of action for the determination

of damages." It did not alter the holding in *Izzo* and does not pertain to whether a claim for loss of consortium constitutes a separate injury for purposes of calculating the limits of liability under a liability insurance policy. The language of this statute is clear and unambiguous, carving out of the total damages that might be recovered, those damages associated with the loss of consortium. The postmortem loss of consortium cause of action, although separate and independent as a basis for claiming damages, remains derivative of the claim arising out of injury to the spouse, and it could not come into existence without that injury. See *Izzo* v. *Colonial Penn Ins. Co.*, supra, 203 Conn. 305.

To determine the limits of liability under a liability insurance policy, we look to the policy language rather than to the language of § 52-555a. See id. The relevant language in the policy at issue provides: "The limit of liability for [uninsured motorist] Coverage shown in the Declaration for 'each person' multiplied by the number of premiums shown, is our maximum limit of liability for all damages, including . . . all . . . derivative . . . damages arising out of [bodily injury] sustained by any one person in any one accident." Thus, the limit of liability under the policy for damages arising out of a single accident is subject to the limitation calculated on the basis of the number of persons suffering "bodily injury." Only one person sustained bodily injury in this case. See id. The limit of liability is, therefore, $300,000 for all damages suffered as a result of the decedent's injuries, including any loss of consortium suffered by the plaintiff. Because that limit is not greater than the total amount of the tortfeasor's liability insurance coverage available to the plaintiff, the tortfeasor's motor vehicle does not qualify as an "underinsured" motor vehicle, and no coverage is available to the plaintiff

under the uninsured-underinsured coverage provided by the terms of her policy with the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.