[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE
FACTS 
On October 16, 1996, the plaintiffs, Mario and Marlene Pac, filed a two count complaint against the defendants, Mastrobattisto, Inc. and Michael Mastrobattisto. The first count alleges that Mario Pac (Pac), an employee of Mastrobattisto, Inc., was required to climb into an excavation site on Sabina Drive in the Town of Southington to assist in the installation of a water main. While in the excavation site, the side walls of the excavation collapsed pinning Pac's leg against the water main. The plaintiffs allege, that the injuries were the result of the reckless or serious conduct of the defendants in that they:
 (a) were well aware that the excavation in question was inadequately sloped such that the sides were too steep and protection was required of persons inside the excavation site;
 (b) were well aware that a trench box was required, given the depth of excavation and that a trench box was requested, yet failed and refused to provide a trench box despite ordering employees to work in the site;
 (c) failed to properly evaluate the soil type, etc., for the looseness of the soil in order to determine whether additional protection or bracing was require;
CT Page 1434
 (d) knew that the soil type in the area where the site excavation was located was loose and likely to collapse as the new area was previously excavated and had not been fully tamped to ensure rigidity;
 (e) had been previously cited by governmental authorities, in particular, OSHA, for not using trench boxes, when trench boxes were required, and despite said knowledge, refused to provide a trench box on the date in question;
 (f) had previously been investigated and fined by OSHA for disregarding regulations pertaining to safe trenching and despite said knowledge and notice, failed to provide adequate trenching, bracing and/or sloping on the date in question.
In the second count the Marlene Pac alleges a claim for loss of consortium.
The defendants move to strike on the grounds that the exclusivity provision of the Workers' Compensation Act bars claims based on "reckless or serious misconduct," and the loss of consortium claim is derivative of the injured spouse's cause of action, therefore if the first count is legally insufficient then so is the loss of consortium claim.
"The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint, counterclaim, or cross complaint to state a claim upon which relief can be granted." Waters v. Autuori, 236 Conn. 820, 825, 676 A.2d 357
(1996). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint"; Id.; and the grounds specified in the motion. Blancato v. Feldspar Corp.,203 Conn. 34, 44, 522 A.2d 1235 (1987). "The motion to strike admits all facts well pleaded." Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). "It does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings."Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 215, 618 A.2d 25 (1992). "The court must construe the facts in the complaint most favorably to the plaintiff." Waters v.Autuori, supra, 236 Conn. 825. "The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." Clohessyv. Bachelor, 237 Conn. 31, 33 n. 4, 675 A.2d 852 (1996). CT Page 1435
General Statutes § 31-284 (a) states in relevant part: "An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . ." Our Supreme Court has consistently "interpreted the exclusivity provision of the [Workers' Compensation Act], General Statutes § 31-284 (a), as a total bar to common law actions brought by employees against employers for job related injuries with one narrow exception that exists when the employer has committed an intentional tort or where the employer has engaged in wilful or serious misconduct." (Citation omitted.) Suarez v. Dickmont Plastics Corp.,229 Conn. 99, 106, 639 A.2d 507 (1994). "This exception has been expanded slightly by including within the definition of international torts conduct which is substantially certain to result in the employee's injuries." (Citation omitted; internal quotation marks omitted.) Shpak v. Dan Beard, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 369337 (August 14, 1996, Zoarski, J.). Thus, "an employer may be liable for damages beyond those contemplated by the Workers' Compensation Act when the employer desires to cause the consequences of his act or believes that the consequences are substantially certain to follow from it." (internal quotation marks omitted.) Id. "The substantial certainty test provides for the intent to injure exception to be strictly construed and still allows for a plaintiff to maintain a cause of action against an employer where the evidence is sufficient to support an inference that the employer deliberately instructed an employee to injure himself." (Citation omitted; internal quotation marks omitted.) Suarez v.Dickmont Plastics Corp., supra, 109-10.
"[I]ntent refers to the consequences of an act . . . [and] denote[s] that the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to follow from it." (Citation omitted; internal quotation marks omitted.) Suarez v. Dickmont PlasticsCorp., supra, 229 Conn. 99, 108. "A result is intended if the act is done for the purpose of accomplishing such a result or with knowledge that to a substantial certainty such a result will ensue." Id. "Both the action producing the injury and the resulting injury must be intentional." Id., 109. "To bypass the exclusivity of the act, the intentional or deliberate act or conduct alleged must have been designed to cause the injury that resulted." Mingachos v. CBS, Inc., supra, 196 Conn. 102. CT Page 1436
In Suarez, the plaintiff alleged "that he had been severely and permanently injured while working for the defendant, when, while attempting to clear hot molten plastic out of a plastic molding machine, two of his right hand fingers became caught in the machine and were partially amputated. The plaintiff alleged that his injuries . . . were caused by the defendant's wilful and serious misconduct. The plaintiff further alleged . . . that the defendant: (1) always required the plaintiff and other employees to clean the plastic molding machine while it was in operation; (2) refused to allow the plaintiff or other employees to use safer cleaning methods; and (3) refused to equip the machine with a protective cover or other devise in order to prevent injuries to persons operating or cleaning it." Suarez v. Dickmont PlasticsCorp., supra, 229 Conn. 101.
The Supreme Court reversed the Appellate Court's affirmation of the trial court's granting of summary judgment. The court held "that there [was] a genuine issue of material fact as to whether the plaintiff's injury was `substantially certain' to follow from his employer's conduct so as to satisfy the narrow exception to the exclusivity provision of the act and to allow the plaintiff to pursue his common law remedy at trial." Id., 100-01.
In Mingachos, the plaintiff filed a two count complaint alleging "that the explosion and the decedent's injuries and death were caused by `CBS's violations and actions . . .' of certain enumerated Connecticut statutory regulations and [Occupational Safety and Health Administration] regulations, that `[s]aid actions and violations' were, as to the first count, `wilful and intentional, and created a hazardous condition' and that they were, as to the second count, `reckless, and created a hazardous condition.' As to each of these two counts, it was alleged that despite `CBS' knowledge that such hazardous violations and conditions existed,' it failed to correct them, it failed to warn its employees, and it failed to report them to certain governmental agencies as required by law. It was further alleged that this failure to correct, warn and report was, on the part of CBS, `intentional, malicious, and in wilful and wanton disregard of the health of the plaintiff's decedent and caused his injuries and consequent death." Mingachos v. CBS, Inc.,
supra, 196 Conn. 94-5. The court found that no genuine issue of fact existed, and, therefore granted the defendant's motion for summary judgment.
This court finds the allegations in the present case CT Page 1437 distinguishable from Suarez and more analogous to Mingachos.
Here, the plaintiffs allege that the defendants' conduct was reckless in that they required employees to work in an area where there was no trench box and that the failure to provide a trench box violated OSHA regulations.
"Alleged misconduct deemed to be `reckless' . . . differs from intentional misconduct." Mingachos v. CBS, Inc., supra,196 Conn. 103. "While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it." (citation omitted.) Id. "It is enough that he realizes or, from the facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from a substantialcertainty without which he cannot be said to intend the harm in which his act results." (Emphasis in original.) Id.
The plaintiffs have failed to allege any intentional conduct on the part of the defendants that created a substantial certainty of injury to Pac so as to satisfy the narrow exception to the exclusivity provision of the Act. The plaintiffs have alleged that the defendants acted recklessly by allowing Pac to enter the excavation site when they knew a trench box was required and yet refused to provide it. "The employer must engage in misconduct knowing that it is substantially certain to cause injury; simple negligence or gross negligence is not enough. The misconduct must be tantamount to an intentional tort." (Citation omitted; internal quotation marks omitted.) Recalde v. Werner Pfleider Corp., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 049663 (18 Conn. L. Rptr. 136, October 28, 1996, Corradino, J.). The plaintiffs have not alleged that the defendants' conduct was wilful or intentional. An allegation that the defendants acted negligently or recklessly is insufficient to enable the claim to fall within the narrow exception to the exclusivity provision of the Workers' Compensation Act. Accordingly, the defendants' motion to strike count one of the plaintiffs' complaint is granted.
"The term `consortium' is usually defined as encompassing the services of the wife, the financial support of the husband, and the variety of intangible relations which exist between spouses living together in marriage." Hopson v. St. Mary's Hospital,176 Conn. 485, 487, 408 A.2d 260 (1979). "These intangible elements are generally described in terms of affection, society, CT Page 1438 companionship and sexual relations." (Internal quotation marks omitted.) Id. "[B]ecause a consortium action is derivative of the injured spouse's cause of action, the consortium claim would be barred when the suit brought by the injured spouse has been terminated by settlement or by an adverse judgment on the merits." Id., 494. Where the injured spouse's "claim is barred, the derivative claim of loss of consortium is also barred."Murray v. Commissioner of Transportation, 31 Conn. App. 752, 757,626 A.2d 1328 (1993).
Because Mario Pac's claim is barred by the exclusivity provision of the Workers' Compensation Act, Marlene Pac's derivative claim for loss of consortium is also barred. Accordingly, the defendants' motion to strike count two of the plaintiffs' complaint is granted.
HON. WALTER M. PICKETT, JR. State Judge Referee